**Opinion filed July 23, 2026**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-26-00196-CV

_____

## IN RE JESSICA CORONADO

**Original Mandamus Proceeding**

### M E M O R A N D U M   O P I N I O N

This original proceeding arises from a divorce and suit affecting the parent-child relationship between Relator, Jessica Coronado, and Real Party in Interest, Hiram Coronado. Jessica filed a petition for writ of mandamus in which she challenges the trial court's temporary orders appointing her and Hiram joint managing conservators of their seventeen-month-old child, L.J.C. Specifically, Jessica contends that the Honorable Brent Morgan, presiding judge of the 318th District Court of Midland County, clearly abused his discretion by: (1) appointing both parties temporary joint managing conservators; and (2) requiring her to travel

from Hidalgo County to Hiram's residence in Midland County to exchange possession of L.J.C. Hiram filed a response. We conditionally grant the petition.

*Factual and Procedural Background*

Jessica and Hiram were married in May 2024, and L.J.C. was born in February 2025. Jessica had two children before the marriage, J.E.C. and J.I.C., who were eleven and thirteen at the time of the hearing on temporary orders in April 2026. On December 1, 2025, Jessica separated from Hiram and moved with the three children to her hometown in Hidalgo County.

Jessica testified at the hearing on temporary orders that the day before she left, Hiram "spanked" and "slapped" J.E.C. so hard that it caused bruising to J.E.C. In February 2025, Hiram caused bruising to J.E.C. in the same area in a similar manner. He also spanked Jessica's oldest son, J.I.C., and threatened to physically discipline and humiliate J.I.C. "like in county," referring to his experience in county jail. Jessica reported the abuse and was granted an emergency protective order for the protection of her and her three children. J.E.C. and J.I.C. spoke to law enforcement and forensic interviewers, which led to Hiram's arrest for the felony offense of injury to a child. *See* TEX. PENAL CODE ANN. 22.04(a)(3), (f) (West Supp. 2025).

Jessica offered photographs of J.E.C.'s injuries, and text messages between her and Hiram in which Hiram discussed physically disciplining his stepsons. Additionally, Jessica testified that there was one incident during which Hiram "push[ed]" and "shov[ed]" her, and that Hiram had been arrested in the past for fighting. In light of Hiram's physical abuse of J.E.C. and J.I.C., Jessica sought to be appointed temporary sole managing conservator of L.J.C. *See* TEX. FAM. CODE ANN. § 153.004 (West Supp. 2025).

Hiram testified, and "[p]lead[ed] the Fifth" seven times in response to questions about J.E.C.'s injuries. He agreed that he texted Jessica describing, in

graphic detail, how he intended to discipline J.I.C. in the same manner in which corrections officers punished inmates.

At the conclusion of the hearing, the trial court designated Jessica and Hiram temporary joint managing conservators of L.J.C. with Hiram's periods of possession to be supervised. The trial court further ordered Jessica to transport L.J.C. from Hidalgo County to Hiram's residence in Midland twice a month to exchange possession. In explaining its ruling, the trial court informed Jessica:

> Ma'am, the reason why I'm . . . making you travel [is] because you're the one that moved. And you knew what you were doing. . . . I mean, you can't say that you were trying to hide from [Hiram] because you were scared because the one place where he would go look for you is where your family is. You could have picked any one of the over 200 counties in Texas. But you chose the one county that . . . your mom resides in and you're trying to hide from [Hiram]? Come on. So you want to stay in Hidalgo County, I'll let you stay in Hidalgo County but you're doing all of the traveling for the visitation.

The trial court then addressed Hiram:

> Sir, I don't know what happened. All I know is that the children were interviewed and as a result of [those] interview[s] you got arrested. So the best I can tell is that there was enough evidence to arrest you. That means there [was] some evidence that you committed injury to a child. . . . I have got no choice. I need to have [visitation] supervised at least as of right now. . . . I know you're not thrilled about me letting [Jessica] live in Hidalgo [County]. But that is why I'm making her travel. . . . [S]he's free to move back to Midland County if . . . she doesn't want to make that drive anymore.

Jessica filed the instant petition for writ of mandamus challenging the trial court's temporary orders.

### Mandamus Standard of Review

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig.

proceeding).  A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  First, "[a]n appeal is not an adequate remedy when a party complains of temporary orders" entered while a SAPCR is pending.  *In re Walser*, 648 S.W.3d 442, 445 (Tex. App.—San Antonio 2021, orig. proceeding) (citing *Walker*, 827 S.W.2d at 842).  That is because such temporary orders "are interlocutory and there is no statutory provision for appeal of these orders."  *Id.* at 445.  To the contrary, the Family Code declares that temporary orders rendered in a pending SAPCR "are not subject to interlocutory appeal."  FAM. § 105.001(e).  Therefore, Jessica has no adequate remedy by direct appeal of the trial court's temporary orders in this case.[1]

Trial courts have broad authority to enter temporary orders in a SAPCR "for the safety and welfare of the child."  FAM. § 105.001(a); *see In re Perricone*, No. 11-25-00078-CV, 2025 WL 1184127, at *2, *4 (Tex. App.—Eastland Apr. 24, 2025, orig. proceeding) (mem. op.).  "A trial court abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'"  *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam) (quoting *Walker*, 827 S.W.2d at 839); *see In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019).  Because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law.  *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

---

[1]Jessica argues in what she designated as her first issue that she has no adequate remedy by appeal. She is correct, and we sustain her first issue, but that is only the beginning of our inquiry in this mandamus proceeding. *See Walser*, 648 S.W.3d at 445.

To demonstrate a clear abuse of discretion, a party seeking mandamus relief must show that the trial court "could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). An "appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion, even if the mandamus court would have decided the issue differently." *Id.* Alternatively, the party may demonstrate that the trial court erred in "determining what the law is or applying the law to the facts, even when the law is unsettled." *Id.* (internal quotation marks omitted).

*Section 153.004 of the Family Code*

In Jessica's second issue, she contends that the trial court clearly abused its discretion by appointing her and Hiram temporary joint managing conservators of L.J.C.

It is ordinarily presumed that "the appointment of the parents of a child as joint managing conservators is in the best interest of the child." FAM. § 153.131(b) (West 2014); *see In re C.J.C.*, 603 S.W.3d 804, 818–19 (Tex. 2020). The fit parent presumption, however, is "[s]ubject to the prohibition in Section 153.004." *Id.* § 153.131(a). Section 153.004 provides, in relevant part, that:

> The [trial] court *may not* appoint [the parents] joint managing conservators [of a child] if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child.

FAM. § 153.004(b) (emphasis added). Texas courts have held that "a single act of violence or abuse suffices to show a history of physical abuse." *In re J.M.*, No. 02-16-00428-CV, 2017 WL 3821863, at *4 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.) (collecting cases). Here, Jessica presented evidence that, at a minimum, Hiram struck J.E.C. on two occasions with such force that it caused

5

bruising. She presented photographs of J.E.C.'s injuries and text messages that corroborated her testimony. When Hiram was shown those photographs and asked whether he caused J.E.C.'s injuries depicted therein, he repeatedly asserted his Fifth Amendment privilege against self-incrimination. Thus, the trial court was permitted to draw negative inferences from Hiram's assertion of the privilege—critically, that Hiram was responsible for causing J.E.C.'s bruising as shown in the photographs. *See* TEX. R. EVID. 513(c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007); *In re A.B.*, 372 S.W.3d 273, 276 (Tex. App.—Fort Worth 2012, no pet.); *In re M.R.*, No. 05-25-00162-CV, 2025 WL 1785346, at *2 n.5 (Tex. App.—Dallas June 27, 2025, no pet.) (mem. op.).

Finally, the uncontroverted evidence demonstrated that Hiram was arrested for injury to a child, which the trial court credited as "some evidence that [Hiram] committed" the offense. Upon the presentation of credible evidence that Hiram physically abused J.E.C., the trial court was prohibited from appointing Hiram as a joint managing conservator of L.J.C. *See* FAM. § 153.004(b); *In re J.J.G.*, 540 S.W.3d 44, 60 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Consequently, the trial court's conservatorship determination in its temporary orders constituted a clear abuse of discretion. *See* FAM. § 153.004(b).

Accordingly, we sustain Jessica's second issue.

*Unilateral Travel Provision*

In her third issue, Jessica asserts that the trial court clearly abused its discretion by ordering that "[a]ll exchanges [of L.J.C.] shall occur at [Hiram's] residence." As set forth above, trial courts may only issue temporary orders "for the safety and welfare of the child." FAM. § 105.001(a); *see also* FAM. § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the

child."). In this case, we need not speculate about a connection between the challenged order and the safety and welfare of L.J.C. because the trial court plainly stated its rationale for ordering exchanges to occur at Hiram's residence and imposing the burden to travel on Jessica. The trial court first informed Jessica: "So you want to stay in Hidalgo County, I'll let you stay in Hidalgo County but you're doing all of the traveling for the visitation." The trial court then told Hiram: "I know you're not thrilled about me letting her live in Hidalgo [County]. But that is why I'm making her travel." As such, the trial court's temporary order on this issue bears no discernible relation to the safety and welfare of L.J.C. and was therefore a clear abuse of its discretion. We sustain Jessica's third issue.

*This Court's Ruling*

Accordingly, we conditionally grant Jessica's petition for writ of mandamus and direct Judge Morgan to vacate the temporary orders that he signed on May 29, 2026. A writ of mandamus will issue only if he fails to act by August 7, 2026.

JOHN M. BAILEY
CHIEF JUSTICE

July 23, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.